Simms *vs.* Smith.

2 *Vern.* 609.    *Sugden on Vendors, ch.* 17.    4 *Wheat. R.* 466.
2 *Story's Eq.* §408.

Upon this ground, let the judgment be reversed.

---

No. 29.—JOHN C. SIMMS, administrator, &c. plaintiff in error, *vs.*
OTIS SMITH, defendant in error.

[1.] Parol testimony is incompetent to vary a trust in chattels, which is manifested in writing; where, however, 'the trust is discretionary, parol evidence may be admitted to show how that discretion was exercised.

[2.] Some general observations, as to the mode of citing authorities in the Supreme Court.

[3.] Where a trust is executory and acknowledged as a continuing, subsisting trust, there is no starting point for the operation of the Statute of Limitations; and it never will begin to run, until the trust is terminated by the separate act of one of the parties, or the joint act of both.

[4.] In Equity a re-hearing will sometimes be ordered *upon terms,* although in strictness no rule of law has been violated on the trial, provided it manifestly appear from the record, that on account of the rejection of testimony, the party prevailing has obtained an unconscientious decree.

. In Equity, in Coweta Superior Court.    Tried before Judge
HILL, September Term, 1851.

This was a bill filed for discovery, account and settlement.
The bill charges, that on 20th day of January, 1840, complainant placed in the hands of Thomas C. Brown, notes on solvent persons, amounting in the aggregate to about $6000, for which Brown executed the following receipt:

"Received, January 20th, 1840, of Otis Smith, the following notes, to be disposed of in such manner as my judgment may dictate, for which I am to return an account to said Smith when called for." The receipt specifies the notes, and is signed,

"T. C. BROWN."

The bill charges, that owing to the pressure in the financial condition of the country, the said Brown realized a large amount from said fund, by means of shaving paper, and loaning at usurious interest, and that said fund was received by Brown, and held and used by him in trust, and for the use and benefit of the complainant; that being satisfied with the profit Brown was realizing from said fund, he did not call on him for a settlement, until a short time before Brown's death, which occurred in the year 1847. Brown then promised to come to a settlement, and appointed a day for that purpose, but his feeble condition prevented its execution.

The bill charges, that Simms had been appointed administrator on the estate of Brown, by the Court of Ordinary of Coweta County; and that complainant had frequently called on Simms for a settlement, which had been refused.

The bill prays that Simms, as administrator, &c. may come to an account and settlement with complainant, &c.

The defendant filed his answer, in which he pleaded an account and settlement between his intestate, Brown, and complainant, and also insisted upon the Statute of Limitations.

On the trial, complainant introduced witnesses, among them William Dougherty, to prove that Brown had admitted that he was using funds for the use and benefit of complainant, &c. To which testimony, counsel for defendant objected, on the ground that such evidence enlarged and varied the written contract between the parties, to-wit: the receipt.

The objection was overruled by the Court, and the evidence admitted, and counsel for defendant excepted.

The complainant having closed his case, the defendant sought to prove by Henry Long, that Thomas C. Brown in his life time, to-wit: in the early part of 1841, had paid to the administrators of James Fannin, the sum of $2800, or thereabouts, in extinguishment of a debt due said estate by Smith, the complainant.

The Court ruled the testimony inadmissible, on the ground that it showed a payment, and that no payment had been pleaded by the defendant.

Counsel for defendant excepted.

The testimony of Kinchen L. Harrison, going to the same point, was ruled out by the Court, and counsel for defendant excepted.

Counsel for defendant requested the Court to charge the Jury, " that the Statute of Limitations commenced to run from the date of the receipt." Which charge, the Court refused to make, but charged that the receipt, *per se*, showed that something was to be done with the funds by Brown, executory in its character, for which he was accountable on demand, and therefore, that the Statute only run from the time of a demand for an account.

To which, counsel for defendant excepted, and upon these several exceptions, have assigned error.

JOHN L. STEPHENS & WELLBORN, for plaintiff in error.

HILL, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Otis Smith filed a bill in Coweta Superior Court, against John C. Simms, as administrator of Thomas C. Brown, deceased, charging that in January, 1840, he placed in the hands of said deceased, solvent notes, amounting to some six thousand dollars, which Brown received, in especial trust and confidence, and was to collect and employ the proceeds, as his agent, and for his use and benefit, in whatever way Brown might deem best and most conducive to complainant's interest; that he received said fund, promising to account for the principal and profits made thereon, whenever requested; that Brown immediately collected the whole amount of money due upon said notes, and placed the same into active and profitable operation, by shaving notes at heavy discount; and that by this and like means, the profits on said fund, amounted in 1847, to fifteen thousand dollars.

The bill further alleged, that in 1847, complainant demanded an account and settlement, which the defendant died without making; that Simms was appointed his administrator; the prayer was for an account. The receipt given by Brown to Smith, and

which was appended to the bill, as an exhibit, was as follows: "Received, January 20th, 1840, of Otis Smith, the following notes, to be disposed of in such manner as my judgment may dictate, for which I am to return an account to said Smith when called for, &c." A schedule of the notes is subjoined.

To this bill an answer was filed, in which Simms, in behalf of his intestate, insisted that Brown had accounted with Smith in his life time, for the principal and lawful interest collected upon these notes, which he contended, was all he was bound to pay; and that in January, 1843, the parties had a full and final settlement, when Smith fell in Brown's debt, some six hundred dollars, for which he gave his note of hand. The answer also sets up as a defence, the Statute of Limitations.

[1.] Two witnesses, William H. Hooper and William Dougherty, were offered on the part of the complainant, who testified that Brown admitted, in sundry conversations with them, that he had Smith's effects in his hands; and that he had induced Smith to convert his negroes into money, and to deposit the proceeds with him, to be employed for Smith's benefit, as Smith was thriftless in the management of property. Brown promised that he could, and would make the fund, pay Smith a good interest. They further proved, that some five or six thousand dollars was realized on Smith's notes very soon after they came into Brown's possession.

The introduction of this evidence was objected to, on the grounds: 1st. That it was irrelevant; and 2dly. That it altered and enlarged the written contract between the parties, that is, the receipt appended to the bill. The objection was overruled by the Court, and we think properly. Holding as we do, that the receipt itself constituted a *trust*, and that it needed no *aliunde* proof, to elucidate the true intent and meaning, the testimony served to establish, several important facts. It showed, among other things, that the fund came immediately into the hands of Brown, and that by his own admissions he was actively and advantageously investing it, for the use of Smith. The *dates*, too, when he made these acknowledgments, are very material, setting up as his representative does, a final settlement between the intes-

tate and Smith, in January, 1843, in bar of any other or further account.

It seems that complainant Smith was owing the estate of one James Fannin, deceased, a large debt, amounting, the first of January, 1842, to $2877 14. The defendant proposed to prove by Henry Long and Kinchen L. Haralson, that he had discharged the debt, and that it was done by the authority, and under the express instructions of Smith. But the Court rejected the testimony, upon the ground that no foundation was laid for its introduction by the defendant in his answer; that he had neither pleaded payment generally, nor set forth the facts of this transaction, so as to entitle him to the benefit of the proof. And we are not prepared to say, but that in strictness the Court was right. This bill is filed, however, for an account; and the defendant who is not presumed to be cognizant of all the pecuniary transactions of his intestate, states generally, that he is advised, and believes, that Brown did in his lifetime account to the complainant for the full amount, which he collected for him; and that on the 17th day of January, 1843, he came to a full and fair settlement of all money matters between Smith and himself; that the complainant was found to owe his intestate a balance of $666 72, for which he gave his note, due one day after date.

The equity of the case, is so strongly with the defendant, that rather than exclude this credit, and thus deprive his estate of the benefits of this disbursement, we should feel bound to send this case back, and order a new trial, for the purpose of letting in this proof.

Without stopping to consider the charge of the Court, under each particular specification into which it has been subdivided in the assignment of errors, I propose to restrict my examination to one other question only, viz: whether the complainant's right to call the administrator of the defendant to account with him, concerning the notes placed in his intestate's hands, and entrusted to his discretionary management for Smith's benefit, is not barred by the Statute of Limitations.

[2.] And I take this occasion, to repeat an intimation thrown

out by the Court, more than once during the present term; and that is, that where a point has been distinctly made by the pleadings and solemnly adjudicated by this Court, it would not only save time, to us all so precious, but a useless expenditure of labor, both on the part of counsel and the Court, if counsel would rest the case upon the decision. It is not unusual to consume hours in reading authorities which have been reviewed and referred to by this Court, in parallel cases, and then to conclude, perhaps, by remarking that the principle which they establish, was ruled or recognized by this Court, in a certain case, which is cited perhaps on the brief, but not always read on the argument.

Now, if it be desirable to show a distinction between the original reports, and the decided case, in some particulars, or to carry the doctrine which they establish, further than it has hitherto been adopted, it is altogether right and proper to refer to them, provided, the point under consideration turns upon the discrepancy; otherwise we respectfully submit that our own decisions are paramount authority, until reversed.

How often too, have we been compelled to listen to an eloquent appeal from the bar, to induce us to grant a new trial, on the ground that the verdict rendered in the Circuit Court, was contrary to evidence. Our books are crowded with opinions upon this point. And yet from the case of *Jones vs. The State*, in 1 *Kelly,* down to *Walker vs. Walker*, just argued, this Court has never exhibited the slightest variableness upon this question. Its uniform position has been, both in *civil* and *criminal* cases, that if there was *any* evidence to support the verdict of the Jury, it would not be disturbed. If this doctrine is not firmly settled in this Court, nothing is or can be. And so of many other principles, which need not be enumerated. This will suffice for an illustration; and with these preliminary observations, I pass on to the exception under discussion.

[3.] As it respects the plea of the Statute of Limitations, we think this case identical in every feature and fact with *Keaton &amp; Greenwood*, 8 *Geo. Rep.* 97.

There, as here, the complainant in the bill, had deposited in

the hands of the defendant, a large amount of money and property, to be used, managed and invested, for her benefit, in the *trust* and *confidence* that it would be so used, managed and invested, as would be most conducive to the complainant's interest; and that the defendant would account for the same, and the profits arising therefrom, whenever requested so to do. The bill there, as here, charged that the defendant accepted the trust, by receiving the money and property, for the purposes designated, and had made large profits from the same. In both cases, it appears that the trust continued as a *subsisting trust* in defendant—in *Keaton & Greenwood,* from 1835 to 1849, and in the case before us, from 1840 to 1847. In the former case fourteen years had intervened, before an account and settlement were demanded in; the present case, seven years only—just half that time. In the former case, we held that the Statute did not begin to run in favor of *Keaton,* the defendant, until 1849, when the agent of Mrs. Greenwood, the complainant, called on him for an account, which he refused to render, denying that he had any effects of her's in his hands. To be consistent, we cannot then, do otherwise than hold, that from the allegations in the bill and the testimony in the case before us, the starting point for the operation of the Statute, was in 1847, when Brown was called on by Smith, for an account, and a settlement was demanded. It does not appear, even at that time, that the trust was disavowed, or any adverse claim set up to the funds in his hands.

Our judgment therefore is, that this being a case of express trust, created by the act of the parties, that the Statute did not begin to run in favor of Brown, so long as the trust continued and was acknowledged by Brown; for until he repudiated the trust, his possession was, in contemplation of law, the possession of his *cestui que trust.*

Mr. Wellborn argues, that according to the rule in *Kane vs. Bloodgood,* (7 *Johns. Ch. Rep.* 123,) and which has received the sanction of this Court, that Smith having an ample remedy at Law, for the recovery of his effects, i. e. trover or *detinue,* or assumpsit for money had and received, that he could not evade-

the Statute by electing to sue in Chancery; and that all that Chancery could, or would do, would be to hear a reasonable excuse, for having omitted to sue at Law ; and that to go beyond this, would be to place the rights of defence, in certain cases, in the hands of plaintiffs, and to permit them at will to use the Courts of Chancery, as the means of arresting them from defendants.

Conceding all this to be true, does it apply to the case made by this record? This bill is not filed to recover back the fund *merely*, placed in the hands of Brown by Smith, but to compel his estate to answer for the due performance of the trust, which he voluntarily assumed in his life time, for the benefit of the complainant. And in England no action at Law would lie for this purpose. Had the trust been terminated by Brown's converting the effects to his own use, or denying that he held them, and notifying Smith of the fact, trover, or detinue, or assumpsit, might have been brought as suggested ; and under that state of facts, these Common Law actions would have afforded an ample and adequate remedy, and the Statute of Limitations would have run against a proceeding in Chancery, from that time.

But neither party desired to discontinue the trust ; on the contrary, it was permitted to run on, until the year Brown died. And now an appeal is made to Chancery, not to recover the assets, but to coerce an account of the trust, in accordance with the contract, which I repeat, no Common Law suit will reach ; resort can only be had to Equity, where matters of this sort are alone cognizable and relievable.

It is possible that under the 53d section of the Judiciary Act of 1799, conferring Equity powers upon our Superior Courts, and the amendatory Statute of 1820, which allows parties, *in all cases*, to institute their action upon the Common Law side of the Court, where they *conceive* that they can establish their claim without resorting to the conscience of the defendant, that a suit at Law might be brought in this State, to enforce even the execution of a trust. Such an attempt however, would obviously be attended with such stubborn, if not insurmountable difficulties, that few attorneys would have the courage—I had almost

said the hardihood—to make the experiment. It is due to counsel to state, that they do not take this position.

I submit, moreover, that if it be true, that where a party has a *legal* remedy, he cannot escape the Statute by retreating into Equity: so on the other hand, under the Acts I have quoted, where he *conceives* that he has none—and in this class of cases, the discretion is lodged with the party himself—and when by the Common Law, he has no other recourse but in Chancery, it would be oppressive in the extreme, to take away his right; and for myself I must insist and hold, that in cases like the present, the principle of legal remedies, has no application. The trust was executory and subsisting; and until put an end to by the separate act of one of the parties, or the joint act of both, there was no starting point for the operation of the Statute; it never could begin to run, so long as the trust was acknowledged, as a continuing, subsisting trust.

[4.] In view of the whole case, we shall grant a re-hearing unless the complainant will write off, from the amount of his recovery, the sum paid by Brown, for Smith, to Fannin's estate, to wit, the sum of $2877 14, with interest thereon, from the first of January, 1842, and so adjudge accordingly.